FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 28, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUAN G., | NO: 1:23-CV-3182-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Juan G.[1], ECF No. 8, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 9. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claims for Social Security Income ("SSI") under Title XVI, and Disability Insurance Benefits ("DIB") under Title II, of the Social Security Act (the "Act"). *See* ECF No. 8 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 1

Having considered the parties' briefs, including Plaintiff's reply, ECF No. 15, the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court grants Plaintiff's request for judgment and remand in his Opening Brief and remands for further proceedings.

## BACKGROUND

### *General Context*

Plaintiff filed successive[2] applications for SSI and DIB on approximately February 24, 2021, alleging disability onset on September 29, 2020. Administrative Record ("AR")[3] 265–78. Plaintiff was 39 years old on the alleged disability onset date and asserted that he was unable to work due to a variety of conditions, including: sleep issues/night terrors; severe depression; severe anxiety with panic attacks; eustachian tube dysfunction/hearing loss/ear pain; post-traumatic stress disorder ("PTSD"); social isolation; low back pain; borderline diabetes; and "left arm/hand injury/nerve damage/cramping/pain." AR 307. Plaintiff's claims proceeded to a hearing before Administrative Law Judge ("ALJ") William J. Bezego on October 18, 2022, held telephonically from Seven Fields, Pennsylvania. AR 44–70. Plaintiff was present and represented by attorney Timothy Anderson. AR 46. The ALJ heard from vocational expert ("VE") Katherine Young and from Plaintiff.

---

[2] The Court resolved Plaintiff's appeal of his previous disability application denials at Case No. 22-CV-3142.

[3] The Administrative Record is filed at ECF No. 6.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 2

1   AR 46–40.  ALJ Bezego issued an unfavorable decision on November 29, 2022.  AR

2   22–38.

3      ***ALJ's Decision***

4      Before proceeding through the five-step evaluation process, ALJ Bezego

5   addressed objections from Plaintiff's representative regarding VE Young.  AR 23–

6   24.  ALJ Bezego then found the following at each step of the evaluation process:

7      **Step one:** Plaintiff meets the insured status requirements of the Act through

8   December 31, 2023.  AR 28.  Plaintiff has not engaged in substantial gainful activity

9   since September 29, 2020, the alleged onset date.  AR 28 (citing 20 C.F.R. §§

10  404.1571 *et seq*. and 416.971 *et seq*.).

11     **Step two:** Plaintiff has the following severe impairments that are medically

12  determinable and significantly limit his ability to perform basic work activities as

13  required by SSR 85-28: affective disorder; residual effects of a gunshot wound to the

14  left upper extremity; obesity; degenerative disc disease; gastroesophageal reflux

15  disease; and cannabis abuse.  AR 28 (citing 20 C.F.R. §§ 404.1520(c) and

16  416.920(c)).

17     **Step three:** The ALJ concluded that Plaintiff does not have an impairment, or

18  combination of impairments, that meets or medically equals the severity of one of

19  the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

20  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 28–29.

21  The ALJ memorialized that he considered "various sections of 1.00 (Musculokeletal

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 3

System) and 5.00 (Digestive System) of the Listings of Impairments" and found that the medical evidence fails to establish the requirements of the listings.  AR 29.

In considering whether Plaintiff's mental impairments are of listing-level severity, the ALJ addressed the "paragraph B" criteria with respect to listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) and found that Plaintiff's impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.  AR 29.

The ALJ found that Plaintiff is moderately limited in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and in adapting or managing oneself.  AR 29–30. The ALJ cited to portions of the record in explaining his findings.  AR 29–30.

The ALJ also memorialized that he considered the "paragraph C" criteria and found that while Plaintiff's medical record indicates that his mental impairments have persisted for more than two years, Plaintiff's record supports that he is "able to care for himself and his needs, live with his friends, and visit with friends."  AR 30. Therefore, the ALJ concluded that the "paragraph C" criteria were satisfied.  AR 30.

**RFC:** The ALJ found that Plaintiff can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [H]e is limited to no more than frequent handing [sic], fingering and feeling with the left, nondominant upper extremity.  No working in areas of concentrated fumes, odors, gases, temperature extremes, or

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 4

other similar pulmonary irritants. No working at unprotected heights, around dangerous machinery, or around other similar workplace hazards. Limited to routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; only occasional interaction with public, coworkers, and supervisors; able to maintain concentration, persistence and pace for extended periods on simple job tasks but not complex job tasks.

AR 30. In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 31.

**Step four:** The ALJ found that Plaintiff is unable to perform past relevant work as a die cutter; assembler; and dining room attendant because Plaintiff's previous jobs are classified as medium-exertional-level jobs while the ALJ determined that Plaintiff's limited to jobs at the light exertional level. AR 36 (citing 20 C.F.R. §§ 404.1565 and 416.965).

**Step five:** The ALJ found that Plaintiff has at least a high school education and was 38 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date. AR 36–37 (citing 20 C.F.R. §§ 404.1563, 404.1564, 416.963, and 416.964). The ALJ found that transferability of job skills is not an issue because "using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 5

1  job skills." AR 37 (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

2  The ALJ found that given Plaintiff's age, education, work experience, and RFC,

3  Plaintiff can make a successful adjustment to other work that exists in significant

4  numbers in the national economy.  AR 37.  Specifically, the ALJ recounted that the

5  vocational expert identified the following representative occupations that Plaintiff

6  would be able to perform with the RFC: Inspector and Hand Packager (with 50,000

7  jobs available nationwide); Mail Clerk (with 76,000 jobs available nationwide); and

8  Bench Assembler (with 96,000 jobs available nationwide).  AR 37.

9      The ALJ concluded that Plaintiff was not under a disability, as defined by the

10  Act, from September 29, 2020, through the date of the decision.  AR 38.

11      Through counsel, Christopher Dellert, Plaintiff sought review of the ALJ's

12  decision in this Court.  ECF No. 1.

13                              **LEGAL STANDARD**

14  ***Standard of Review***

15      Congress has provided a limited scope of judicial review of the

16  Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

17  Commissioner's denial of benefits only if the ALJ's determination was based on

18  legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

19  993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

20  determination that a claimant is not disabled will be upheld if the findings of fact are

21  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 6

1    1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

2    scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

3    1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

4    1989).  Substantial evidence "means such evidence as a reasonable mind might

5    accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

6    401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

7    [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

8    *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the

9    record, not just the evidence supporting the decisions of the Commissioner.

10   *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

11   A decision supported by substantial evidence still will be set aside if the

12   proper legal standards were not applied in weighing the evidence and making a

13   decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

14   1988).  Thus, if there is substantial evidence to support the administrative findings,

15   or if there is conflicting evidence that will support a finding of either disability or

16   nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

17   812 F.2d 1226, 1229–30 (9th Cir. 1987).

18   ***Definition of Disability***

19   The Act defines "disability" as the "inability to engage in any substantial

20   gainful activity by reason of any medically determinable physical or mental

21   impairment which can be expected to result in death, or which has lasted or can be

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 7

expected to last, for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R §§ 416.920, 404.1520. Step one determines if they are engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 8

Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past.  If the claimant can perform their previous work, the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering their residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 9

can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

The parties' briefs raise the following issue regarding the ALJ's decision:

1.  At step five, did the ALJ erroneously accept the number of jobs testified to by the VE where Plaintiff objected to the accuracy of the number of jobs available and submitted rebuttal evidence?

***ALJ's Treatment of Vocational Expert Testimony and Step Five Analysis***

<u>Parties' Arguments</u>

Plaintiff argues that a VE must articulate his or her methodology "in a manner that instills some confidence that the estimate was not conjured out of whole cloth." ECF No. 8 at 8 (citing *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022)). Plaintiff contends that an ALJ "must consider all of the features" of a VE's testimony. *Id.* Plaintiff continues that the ALJ incorrectly framed Plaintiff's counsel's objections as being to the VE's qualifications to extrapolate the numbers of positions. *Id.* at 8–9. Plaintiff maintains that his representative instead objected "because the method that [VE Young] used resulted in grossly inflated numbers." *Id.* at 9. Plaintiff articulates his specific objection as follows:

> Ms. Young testified that even though different vocational consultants used different methods for estimating the number of positions available within an occupation, they should come up to similar conclusions about the number of positions available. Mr. Anderson's objections stem from the fact that the numbers of positions that Ms. Young testified to

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 10

for two of the occupations exceeded the total number of positions for the entire OES Groups they belonged to while the numbers for the third occupation represented 73% of the total positions for an OES Group containing 782 occupations. This discrepancy is inexplicable when the fact that both OASYS and JobBrowser Pro start from the same underlying data from the Bureau of Labor Statistics is taken into account. Notably, Ms. Young's estimates for the Inspector position would be accurate if corrected for her over-estimation of the total number of jobs within the OE Group (see below). While Ms. Young may have been qualified to offer vocational testimony, as the ALJ noted, this documented discrepancy demonstrated called the reliability and evidentiary value of her testimony into question. *See White [v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022)] ("a VE may 'offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar.'").

*Id.* at 9–10 (citing AR 66).

Plaintiff further argues that the rebuttal evidence from another vocational consultant, Trevor Duncan, submitted by Plaintiff's counsel at the administrative level supported that there were not significant number of positions available for an individual with Plaintiff's residual functional capacity. ECF No. 8 at 6 (citing AR 370, 373, 400, 402–03, and 407).

The Commissioner responds that by submitting supplemental vocational evidence, Plaintiff merely created a conflict that the ALJ could resolve by providing "detailed, relevant, and cogent reasons for relying on the October 2022 hearing testimony" from VE Young. ECF No. 9 at 3–4. The Commissioner continues that the ALJ reasonably found VE Young's testimony persuasive by noting that: (1) Plaintiff had not challenged VE Young's qualifications and credentials; (2) the ALJ was bound by the Social Security Administration's policy regarding the Dictionary

1   of Occupational Titles ("DOT") and other job information from administratively-

2   noticed sources; and (3) Plaintiff's administrative-level counsel argued facts not in

3   evidence.  *Id.* at 4 (citing AR 23–25).

4          The Commissioner further argues that the ALJ was not even required to

5   address the conflict between VE Young and vocational consultant Duncan's

6   opinions because Dr. Duncan's conflicting job number evidence does not have

7   significant and probative value.  ECF No. 9 at 4 *(citing Wishcmann v. Kijakazi*, 68

8   F.4th 498, 508 (9th Cir. 2023)).  Specifically, the Commissioner asserts that the

9   alternative job numbers provided by Plaintiff post-hearing through Dr. Duncan were

10  not from the same sources that VE Young relied on, and, therefore, the alternative

11  job numbers "were not 'produced using the same methodology as that used by the

12  VE.'"  ECF No. 9 at 7 (quoting *Wischmann*, 68 F.4th at 506–07).

13         Plaintiff replies that the differences between the software programs used by

14  VE Young and vocational consultant Duncan are not material in that both programs,

15  JobBrowser Pro and OASYS "should show the same number of positions with an

16  OES Group as a starting point as the programs do not differ in this respect."  ECF

17  No. 11 at 4–5.  Plaintiff re-asserts that the ALJ's step five finding was not supported

18  by substantial evidence because VE Young did not accurately describe her

19  methodology in reaching the job numbers that the ALJ used.  ECF No. 11 at 5.

20  Specifically, Plaintiff maintains that VE Young's testimony contradicted itself where

21  VE Young "testified that she relied on OASYS as a starting point for her testimony

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 12

1  as to the number of positions before adjusting based on her experience and job

2  surveys," but then: (1) "testified that 537,500 positions existed within one OES

3  group where JobBrowser Pro showed only 68,241 positions within that same group;

4  and (2) "[f]or the other two occupations, she testified to a greater number of

5  positions than existed in their entire OES group." *Id.* at 5–6 (citing AR 60–61, 65,

6  400, 402–03, 407). Plaintiff adds that "[i]f the information from JobBrowser Pro is

7  accepted, there would only be 17,491 positions among the three occupations testified

8  to." *Id.* at 7. Plaintiff contends that the Commissioner's reliance on the Ninth

9  Circuit's decision in *Wischmann*, 68 F.4th at 505, is misleading. *Id.* at 6. Plaintiff

10  asserts that while the Commissioner here asserts that the contradicting evidence

11  from vocational consultant Duncan is not probative because he used different

12  methods, the Ninth Circuit's opinion in *Wischmann* that the Commissioner cites

13  "was discussing another case in which the administrative attorney had submitted

14  competing job numbers based on his own calculations." (citing ECF No. 9 at 7;

15  *Wischmann*, 68 F.4th at 505 (citing *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1190–91

16  (9th Cir. 2022)).

17  <u>Legal Standard</u>

18  At step five of the sequential analysis, the ALJ has the burden to identify

19  specific jobs existing in substantial numbers in the national economy that the

20  claimant can perform despite his identified limitations. *Johnson v. Shalala*, 60 F.3d

21  1428, 1432 (9th Cir. 1995). Furthermore, the ALJ's decision regarding the number

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 13

1    of available alternative occupations must be supported by substantial evidence.  *See*

2    *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Substantial evidence

3    means such relevant evidence as a reasonable mind might accept as adequate to

4    support a conclusion."  *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 599 (9th Cir.

5    1999).  "Where the evidence is susceptible to more than one rational interpretation, it

6    is the ALJ's conclusion that must be upheld."  *Id*.

7        If "the ALJ's question to a vocational expert accurately describes the

8    claimant's limitations," the "ALJ ordinarily may rely on the expert's testimony."

9    *Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023).  If there is an apparent

10   conflict between the expert's testimony and the Dictionary of Occupational Titles,

11   the ALJ has an affirmative duty to explain the conflict and determine whether the

12   vocational expert's explanation for the conflict is reasonable.  *Id*.

13       Lastly, when a claimant contests job numbers reported by the VE, the

14   claimant must have raised the issue "at some point during administrative

15   proceedings to preserve the challenge on appeal in federal district court."  *Shaibi v.*

16   *Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017).

17                    Issue-Specific Background

18       Upon hearing the ALJ's formulation of Plaintiff's RFC, the VE testified that

19   Plaintiff would not be able to return to any past work but that there would be other

20   jobs that Plaintiff could perform, such as an Inspector and Hand Packager (50,000

21   positions nationally), a Mail Clerk (76,000 positions nationally), and Bench

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 14

1  Assembler (96,000 jobs nationally).  AR 60–61.  When the ALJ asked VE Young to

2  consider the RFC plus more limited (only occasional, rather than the "no more than

3  frequent" limitation in the RFC) handling, fingering, and feeling with the left

4  nondominant upper extremity, VE Young testified that Plaintiff still could perform

5  the Inspector/Hand Packager and Mail Clerk positions and also could perform work

6  as an Inspector of Confectionary Items (25,000 jobs nationally).  AR 61.  VE Young

7  stated that her testimony was consistent with the DOT.  AR 61–62.

8      VE Young testified that her methodology is to rely on the OASYS software

9  offered by SkillTRAN to find job numbers from data published by the federal

10  government as well as her own knowledge of the labor market from reviewing job

11  postings "within the community."  AR 65–67.  VE Young stated that OASYS is

12  "just a higher level" software from SkillTRAN's other product, Job Browser Pro, but

13  VE Young did not elaborate on what she meant by "higher level."  AR 67.  When

14  asked by Plaintiff's administrative-level counsel whether her job numbers estimates

15  could be replicated by another vocational expert, VE Young testified "I mean if you

16  ask a vocational expert to, you know, come up with numbers in this method, they –

17  we all should be coming up with similar numbers. So it's not really a black or white,

18  yes, or no, answer."  AR 66.

19      At the conclusion of VE Young's testimony, Plaintiff's administrative-level

20  counsel objected to the VE's job numbers testimony on the basis that the

21  methodology was not replicable.  AR 68.  Plaintiff's counsel further objected that

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 15

the job numbers for the positions that the VE identified should have been

"significantly smaller" than VE Young's estimates "to a point where it is not

significant job numbers."  AR 68.  The ALJ left the record open for Plaintiff to

supplement with vocational evidence in an attempt to rebut VE Young's testimony.

AR 68.

After the hearing, Plaintiff provided the ALJ with interrogatories to vocational

consultant Duncan who responded that none of the jobs identified by VE Young

continue to exist as they are defined in the DOT because "[t]hey have been

automated or have become tasks that are incorporated into other jobs[.]"  AR 371–

73.  Plaintiff also submitted printouts from Job Browser Pro indicating that for 2022

there were an estimated 6,135 Inspector positions nationwide; 11,300 Mail Clerk

positions nationwide; and 56 Bench Assembler positions nationwide.  *See* AR 400–

08.

At the outset of his decision, the ALJ resolved Plaintiff's objection, in part, to

VE Young's methodology.  AR 23.[4]  Relevant to the issue before this Court, the

ALJ found:

> Arguments similar to those raised by the claimant's representative as to
> the incidents of jobs the vocational expert recited in response to the
> undersigned's hypothetical questions were raised by the claimant's

---

[4] The Court notes that the ALJ's apparent scrivener's errors in referring to an attorney and a VE with different surnames than those who appear in this case make his analysis of Plaintiff's objection to VE Young's testimony somewhat difficult to follow.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 16

representatives and presented to the Fourth Circuit in *Guiton v. Colvin*, 2013 U.S. App. LEXIS 22620.  The court observed that there is no current data source with respect to job numbers in the national economy that corresponds precisely with the DOT.  To insist upon a precise match of job numbers to DOT titles would place an impossible burden upon the agency. The court noted that was not the result Congress intended.

The DOT is but one of many sources of information normally relied upon by vocational experts, together with more current information, which is publicly available to the representative(s). Specifically, the regulations explain the Social Security Administration will take administrative notice of reliable job information available from various governmental and other publications, including: 1) DOT; 2) County Business Patterns; 3) Census Reports; 4) Occupational Analyses; and 5) Occupational Outlook Handbook.

AR 24–25.

The ALJ further found that VE Young testified that the Hand Packager, Mail Clerk, and Inspector of Confections jobs all are light and unskilled in nature, which is consistent with the DOT titles for those positions.  AR 25.  The ALJ continued: "Together with the vocational expert's professional knowledge, expertise, and experience, the totality of this material forms an adequate basis for the vocational expert to render opinions on jobs and availability of job numbers in this case. The undersigned also notes that Ms. Young is routinely found qualified to testify as an expert before the Social Security Administration based upon these materials. In summary, the undersigned finds that the jobs and job numbers she recited satisfies the Commissioner's burden at Step Five of the sequential evaluation process."  AR 25.  Lastly, the ALJ found the conclusions of Dr. Duncan "less than

1    compelling" because he did not render his opinions under oath and his statements

2    have not been subject to examination by the undersigned because the representatives

3    failed to proffer him as a witness on behalf of their client."  AR 25.

4          The ALJ then relied on the VE's testimony about the number of jobs available

5    in the three occupations in concluding at step five that Plaintiff was not disabled.

6    AR 37.

7                    Application

8          The Commissioner's opposition to Plaintiff's appeal rests in large part on the

9    argument that Job Browser Pro and Occubrowse are not the same products as the

10   OASYS software program that VE Young relied on.  *See* ECF No. 9 at 6.  The

11   Commissioner asserts that while both Job Browser Pro and OASYS are offered by

12   the company SkillTRAN, "SkillTRAN's website makes it clear on the homepage

13   that Job Browser Pro is an intermediate level product whereas OASYS is an expert

14   level product, as Ms. Young's testimony indicated. They are not identical products."

15   *Id.* at 7 (citing AR 67)).  However, neither the Commissioner, the ALJ's reasoning,

16   nor the testimony from VE Young explains how any difference between the Job

17   Browser Pro and OASYS products affects the job numbers for the occupations

18   identified by VE Young.  As other district courts have noted, the Ninth Circuit "'has

19   not held that the plaintiff must precisely replicate the VE's methodology,' only that

20   the plaintiff must 'submit significant probative evidence[.]'"  *Stephanie A. v.*

21   *Kijakazi*, No. 3:22-CV-00349-BGS, 2023 U.S. Dist. LEXIS 173137, at *10–14,

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 18

2023 WL 6305793 (S.D. Cal. Sept. 27, 2023) (citing *Thomas S. v. Comm'r*, No. 6:22-cv-833, 2023 U.S. Dist. LEXIS 106125, 2023 WL 4074769, at *4 (D. Or. June 18, 2023)). Furthermore, these courts have found job estimates submitted by plaintiff to be probative where they are from "presumably the same source" or produced using a closely analogous methodology as the testifying VE. *See Thomas S.*, 2023 WL 4074769, at *4 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017)).

In this case, Plaintiff submitted job number estimates that appear to have been derived from a 2022 version of Job Browser Pro based on the DOT job numbers identified by the VE for Inspector and Hand Packager (6,135 positions); Mail Clerk (11,300 positions); and Bench Assembler (56 positions). *See* AR 400, 402-03, 407. SkillTRAN's Job Browser Pro software has been recognized in caselaw as "a data source and methodology frequently relied on by the SSA," and VE Young testified to using "just a higher level" product from SkillTRAN, OASYS, without indicating that any differences between the products would affect job number estimates. *See White*, 44 F.4th at 837 (citations omitted); *see Catherine L. v. Kijakazi*, No. 2:22-CV-00691-SB, 2023 U.S. Dist. LEXIS 80906, 2023 WL 3318148, at *6 (D. Or. May 9, 2023) (noting that vocational experts "often use SkillTRAN because it is a reliable source of job-number estimates"); AR 67. VE Young also indicated that other vocational experts should "be coming up with similar numbers" using an analogous method. AR 66. The Court finds that the evidence Plaintiff submitted is probative.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 19

1    After determining that job number estimates are probative, the Court turns to

2    whether the rebuttal evidence that Plaintiff submitted is significant, "which in the

3    context of job-number estimates is a measure of the discrepancy between the VE's

4    estimates (upon which the ALJ relied to render the step-five finding) and the

5    claimant's estimates." *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023).  If

6    the job number data from Job Browser Pro submitted by Plaintiff is accepted, there

7    are a meagre 17,491 positions available in the national economy, which undermines

8    whether there are a significant number of jobs that Plaintiff can perform in the

9    national economy.  By contrast, the VE testified to more than 222,000 jobs.  The

10    ALJ did not address this discrepancy between the job number estimates.  AR 24–25.

11    Moreover, the Commissioner maintains that even if Plaintiff's evidence creates a

12    conflict, the ALJ provided "detailed, relevant, and cogent reasons" for relying on VE

13    Young's testimony, but the Commissioner does not and cannot point to any

14    discussion by the ALJ of the discrepancy. *See* ECF No. 9 at 3.  The Court finds the

15    alternative job estimate numbers, submitted in the context of Plaintiff's repeated

16    objections to VE Young's methodology, to be significant.  *See Buck*, 869 F.3d at

17    1047 (holding that where Plaintiff's rebuttal evidence showed that there were only

18    231 bottling-line attendant jobs, 2,039 bottle-packer jobs, and 26 conveyor-belt

19    maker jobs nationally as compared to the VE's testimony that there were 600,000

20    bottling-line attendant jobs, 8,800 bottle-packer jobs, and 235,000 conveyor-belt

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 20

maker jobs nationally, remand was required to resolve the discrepancies that were "too striking to be ignored").

In sum, the Court cannot find that ALJ's decision regarding the number of alternative occupations is supported by substantial evidence. Rather, having found Plaintiff's rebuttal evidence to be probative, significant, and inadequately addressed by the ALJ, remand is required for the agency to reconsider the step-five finding that Plaintiff can perform a significant number of jobs in the national economy.[5] *See Wischmann*, 68 F.4th at 507. In doing so, the ALJ shall resolve any discrepancies between the DOT job numbers, as testified to by the VE, and Plaintiff's proffered job numbers.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is marred by legal error at step five, and the record requires further development. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Opening Brief, **ECF No. 8**, is **GRANTED**.

2. Defendant the Commissioner's Brief, **ECF No. 9**, is **DENIED**.

---

[5] The Court further notes that Plaintiff agrees that remand is the appropriate remedy. *See* ECF No. 16 at 11.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 21

3. The decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order.

4. Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** May 28, 2024.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 22